```
        IN THE UNITED STATES DISTRICT COURT
      FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

**RUTH H. WELLS, ARLEN GLENN**
**WELLS, JR. and NANCY L. INMAN,**

      **Plaintiffs,**

**v.**                              **CIVIL ACTION NO. 1:20CV9**
                                          **(Judge Keeley)**

**ANTERO RESOURCES CORPORATION,**

      **Defendant.**

**MEMORANDUM OPINION AND ORDER GRANTING**
**DEFENDANTS' MOTION TO EXCLUDE EXPERT WITNESS**
**TESTIMONY OF DANIEL FISHER [DKT. NO. 31]**

Pending before the Court is the motion of the defendant, Antero Resources Corporation ("Antero"), to exclude the expert testimony of Daniel Fisher ("Fisher") (Dkt. No. 31). For the reasons that follow, the Court **GRANTS** Antero's motion.

**I.  BACKGROUND**

Ruth H. Wells, Arlen Glenn Wells, Jr., and Nancy L. Inman, (collectively, "the Plaintiffs"), own an undivided one-fourth 1/4 interest in oil and gas in and beneath 450 acres, more or less, of property located in Doddridge County, West Virginia (Dkt. No. 1-1 at 6-7).[1] The Plaintiffs' interest is subject to an oil and gas lease ("Lease") dated June 13, 1961, to which Antero is the

---

[1] The Court takes these facts from the Complaint and construes them in the light most favorable to the Plaintiffs. See De'Lonta v. Johnson, 708 F.3d 520, 524 (4th Cir. 2013).

**WELLS v. ANTERO RESOURCES CORPORATION**                             1:20CV9

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO EXCLUDE EXPERT WITNESS TESTIMONY OF DANIEL FISHER [DKT. NO. 31]

successor-in-interest. Id. at 7. In March and April 2018, Antero executed and recorded a Declaration of Pooling for each of the four units at issue (the "Units"). Id. at 8-11. However, it was not until April 9, 2019 that Antero requested that the Plaintiffs agree to modify the Lease "to allow for modern horizontal drilling technology because the Lease did not contain a pooling clause." Id. The Plaintiffs, however, refused sign the proposed modification (Dkt. No. 1-1 at 8). Within each Unit in dispute are horizontal well bores drilled by Antero that pass through both the Plaintiffs' property and property not owned by the Plaintiffs. Id.

According to the Plaintiffs, despite their refusal to allow the inclusion of their property in these Units, Antero has been producing and selling oil and gas from their wells in the Units. Id. at 8-11. Consequently, on December 16, 2019, they filed a complaint in the Circuit Court of Doddridge County, West Virginia, asserting a single breach of contract claim (Dkt. Nos. 1-1, 1-2), alleging that Antero materially breached the Lease by improperly producing and selling oil and gas extracted from horizontal drilling units that pass through their property despite their refusal to permit the unitization of their property. Id. at 7-8. On January 14, 2020, Antero timely removed the case to the Northern

**WELLS v. ANTERO RESOURCES CORPORATION**                                                **1:20CV9**

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANTS' MOTION TO EXCLUDE EXPERT WITNESS
TESTIMONY OF DANIEL FISHER [DKT. NO. 31]**

District of West Virginia on the basis of diversity jurisdiction (Dkt. No. 1 at 2). Currently pending is Antero's motion to exclude the testimony of the Plaintiffs' expert witness, Daniel Fisher (Dkt. No. 31).

**II. LEGAL STANDARD**

Federal Rule of Evidence 702, governing the admissibility of expert testimony, provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The court, as the gatekeeper, should admit the proposed expert testimony only if it is reliable and helps the jury in understanding the issues or evidence. Westberry v. Gislaved Gummi AB, 178 F.3d 257, 260 (4th Cir. 1999); Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 591 (1993). If the proposed expert testimony fails to meet either prong of this test, the testimony must be excluded. Id. The proponent of the expert

**WELLS v. ANTERO RESOURCES CORPORATION** 1:20CV9

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANTS' MOTION TO EXCLUDE EXPERT WITNESS
TESTIMONY OF DANIEL FISHER [DKT. NO. 31]**

testimony bears the burden of establishing its admissibility by a preponderance of the evidence. Cooper v. Smith & Nephew, Inc., 259 F.3d 194, 199 (4th Cir. 2001); Daubert, 509 U.S. at 592 n. 10.

To assess reliability, the court conducts a flexible inquiry evaluating the expert's methodology rather than the expert's conclusion. TFWS v. Schaefer, 325 F.3d 234, 240 (4th Cir.2003). "A reliable expert opinion must be based on scientific technical or other specialized knowledge and not on belief or speculation, and inferences must be derived using scientific or other valid methods." Oglesby v. General Motors Corp., 190 F.3d 244, 250 (4th Cir.1999). Generally, the court bases its reliability evaluation on the following non-exclusive factors:

> (1) whether the particular scientific theory "can be (and has been) tested"; (2) whether the theory "has been subjected to peer review and publication"; (3) the "known or potential rate of error"; (4) the "existence and maintenance of standards controlling the technique's operation"; and (5) whether the technique has achieved "general acceptance" in the relevant scientific or expert community.

United States v. Crisp, 324 F.3d 261, 266 (4th Cir. 2003) (quoting Daubert, 509 U.S. at 593-94).

Expert opinions that are "bare conclusion[s] without reliable support" must be excluded. See. e.g., Stolting v. Jolly Roger Amusement Park, Inc., 37 F. App'x 80, 83 (4th Cir. 2002); McEwen

4

**WELLS v. ANTERO RESOURCES CORPORATION**                        **1:20CV9**

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANTS' MOTION TO EXCLUDE EXPERT WITNESS
TESTIMONY OF DANIEL FISHER [DKT. NO. 31]**

v. Baltimore Washington Med. Ctr. Inc., 404 F. App'x 789, 791-92 (4th Cir. 2010). "[N]othing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert." McEwen, 404 F. App'x at 791-92; (quoting Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146, (1997).

**III. Discussion**

    **A.**     **Antero's Motion to Exclude**

Daniel Fisher, the Plaintiffs' proposed expert, is a petroleum engineer retained to determine the "quantity of oil and gas production from the plaintiffs' property versus the total amount of oil and gas production from each of the [Unit] well bores" (Dkt. No. 34 at 2-3). The Plaintiffs intend to rely on Fisher's determination to calculate the royalties they should have received from Antero based on their wells' contributions to the Units. Id.

In his report, Fisher proposes to use an "equal production contribution method" to obtain a percentage that "reflects the expected proportional production contribution" from the Plaintiffs' property to each Unit by dividing the number of perforation clusters within the Plaintiffs' property by the total number of perforation clusters in each Unit well bore (Dkt. No. 32-1 at 1).

WELLS v. ANTERO RESOURCES CORPORATION                               1:20CV9

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANTS' MOTION TO EXCLUDE EXPERT WITNESS
TESTIMONY OF DANIEL FISHER [DKT. NO. 31]**

Antero contends that Fisher's opinion testimony is not reliable and will not assist the trier-of-fact either in determining if Antero breached its contractual obligations, or in calculating the damages the Plaintiffs may have sustained from that breach (Dkt No. 32 at 1-2). Antero further contends that, even if Fisher's testimony is reliable, its probative value is substantially outweighed by the danger of unfair prejudice. Id.

**B.   Fisher's Qualifications and Background**

As noted, Fisher is a registered petroleum engineer. His expert report is based on "documentation provided by Antero," the well path map prepared by the Plaintiffs' other expert, Andrea Griffith, and his "knowledge of drilling operations, including natural gas fracking" (Dkt. Nos. 32-1 at 1, 34 at 4). Antero does not challenge his testimony based on a lack of "knowledge, skill, experience, training, or education" under Rule 702.

His curriculum vitae, dated August 16, 2016, documents his wide experience as a drilling engineer, superintendent, and manager (Dkt. No. 34 at 3). After obtaining a degree in petroleum engineering, Fisher worked as an offshore drilling laborer. He also trained contractors on proper engineering principles and studied drilling practices to enhance efficiency. Later, as a project

**WELLS v. ANTERO RESOURCES CORPORATION**                                             1:20CV9

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANTS' MOTION TO EXCLUDE EXPERT WITNESS
TESTIMONY OF DANIEL FISHER [DKT. NO. 31]**

supervisor, Fisher pre-planned numerous domestic and international drilling operations and ensured regulatory compliance; he also oversaw project budgets, bids, contracts, equipment, and personnel.

As is apparent from his curriculum vitae, Fisher specializes in "exploratory and developmental drilling," often in harsh and fragile environments. He has considerable experience in offshore deepwater drilling operations in places such as Newfoundland, Canada and the Gulf of Mexico.

Although an experienced engineer, Fisher has no particular expertise in the marcellus shale gas industry. The only shale gas experience noted in his curriculum vitae occurred two years prior to his retirement in 2016, when he worked in Chevron's Appalachian Mountain Business Unit, to "assist the development and implementation of a D&C Global Assurance process and oversee rig assurance certification, well design, planning certification processes and verification of well execution elements and standards." Nowhere does Fisher indicate that he is familiar with the details of shale gas drilling. For example, he does not indicate that he has studied current shale gas drilling practices, overseen any shale gas drilling operations, established company procedures for shale gas drilling, planned shale gas drilling

**WELLS v. ANTERO RESOURCES CORPORATION**                                                      **1:20CV9**

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANTS' MOTION TO EXCLUDE EXPERT WITNESS
TESTIMONY OF DANIEL FISHER [DKT. NO. 31]**

operations, conducted field inspections, or aided in the implementation of approved shale gas drilling procedures.

Fisher has referenced no documented experience with or knowledge of horizontal drilling, hydraulic fracturing practices, or well unitization. Nor is he experienced in negotiating contract terms with oil and gas lessors, such as the Plaintiffs. Likewise, Fisher lacks experience pricing shale gas or calculating royalty payments owed to lessors under oil and gas leases, where unitization is involved. Of specific relevance to this case, he lacks experience in estimating production volumes from well units or well bores. Nor has he provided expert testimony in this or any other area in the last four years (Dkt. No. 32-1 at 2).

    **C.**   **Fisher's Proposed Expert Opinion**

Under Rule 702, the Plaintiffs must establish by a preponderance of the evidence that Fisher's testimony is sufficiently reliable and relevant. <u>Cooper</u>, 259 F.3d at 199. As to reliability, the Plaintiffs must prove that Fisher's equal production contribution method is based upon scientific or technical knowledge, not mere on belief or speculation. <u>Oglesby</u>, 190 F.3d at 250. According to Fisher, he devised his equal production contribution method because Antero has run no production

**WELLS v. ANTERO RESOURCES CORPORATION**  1:20CV9

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANTS' MOTION TO EXCLUDE EXPERT WITNESS
TESTIMONY OF DANIEL FISHER [DKT. NO. 31]**

surveys down hole from the Plaintiffs' wells (Dkt. No. 32-1 at 1). His calculation assumes that the Plaintiffs' contributions to the gas produced from the Unit well bores are equal to the percentage of Unit perforation clusters located on their property. Fisher, however, does not provide a methodology for converting proportional perforation clusters to damages via the equal production contribution method in his report. The Plaintiffs intend to use Fisher's analysis to contend that, based on the result of his equal production contribution method, they can calculate damages "arguably" as acceptable as Antero's proposed "surface acreage approach," which is the commonly accepted method used in the shale gas industry to calculate royalties where a pooling agreement has been reached (Dkt. No. 34 at 4).

According to the Plaintiffs, Antero, as an industry representative, is advocating for an industry standard created to benefit gas producers. They desire to utilize Fisher's novel method to derive a royalty calculation more beneficial to royalty payees. The problem with Fisher's equal production contribution method, however, is that it appears to be his own *ipse dixit*. While he challenges the prevailing industry standard for calculating royalties from shale gas wells as biased toward gas producers, he

**WELLS v. ANTERO RESOURCES CORPORATION**                           **1:20CV9**

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANTS' MOTION TO EXCLUDE EXPERT WITNESS
TESTIMONY OF DANIEL FISHER [DKT. NO. 31]**

has not supported his assumption or the basis for his opinion with authority beyond his own experience, which notably is lacking in the very industry his critiques.

Fisher's curriculum vitae documents no experience in determining the necessity of unitization, pricing shale gas, calculating royalties based on shale gas production, or estimating production volumes from well bores. Nor does he explain how any of his prior exploratory or deepwater work experience has prepared him to opine on the methods of calculating royalty payments related to pooled horizontal drilling units. Thus, Fisher lacks a reliable basis in his previous work or experience to propose what is clearly a novel method for calculating the amount of royalties Antero allegedly owes the Plaintiffs.

Likewise, the Plaintiffs have offered no evidence that Fisher's method is the product of reliable principles and methods for calculating royalties in the oil and gas field. Fed. R. Evid. 702 (c). The only support they offer for the reliability of Fisher's method is their own sweeping conclusion as to its reliability and "reasonableness" (Dkt. No. 34 at 6). But Fisher's report never discusses his standards of calculation, or demonstrates that it is based on an acceptable method of

**WELLS v. ANTERO RESOURCES CORPORATION** 1:20CV9

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANTS' MOTION TO EXCLUDE EXPERT WITNESS
TESTIMONY OF DANIEL FISHER [DKT. NO. 31]**

accounting. Rather, it appears that Fisher created his calculation based on his beliefs and observation of the Unit maps. This is not sufficiently reliable.

The Plaintiffs have also failed to establish that Fisher has tested or attempted to test his equal production contribution method. Without such testing, Fisher cannot prove, as he has theorized, that the percentage of perforation clusters located on a tract of land within a well bore unit is proportional to the amount of gas that those wells contributed to the well bore unit. Nor have the Plaintiffs cited any peer-reviewed literature supporting Fisher's conclusion, the accuracy of his calculation, or its potential rate of error. There are simply no standards cited in his report to ensure that Fisher's calculation is replicable. Moreover, Fisher's opinion lacks reliability because it does not explain why the generally accepted methodology for calculating royalties in the industry, the surface acreage approach, is inadequate or unreliable to calculate the amount of royalties due to the Plaintiffs in this case.

In sum, Fisher's method has not been subjected to the rigors of peer review or otherwise critiqued. Because no one in the relevant industry has tested or even advanced Fisher's theory, the

**WELLS v. ANTERO RESOURCES CORPORATION**  1:20CV9

**MEMORANDUM OPINION AND ORDER GRANTING**
**DEFENDANTS' MOTION TO EXCLUDE EXPERT WITNESS**
**TESTIMONY OF DANIEL FISHER [DKT. NO. 31]**

Court concludes that his equal production contribution method, far from having achieved general acceptance in the relevant expert community, is unknown in that community. Crisp, 324 F.3d at 266; Daubert, 509 U.S. at 593-94.

Given Fisher's lack of experience in calculating shale gas royalties and the fact that he has developed and applied an untested methodology, his opinion that the Plaintiffs' damages should be calculated based on his equal production contribution method is not sufficiently reliable. The Court therefore concludes that the Plaintiffs have failed to meet their burden of establishing the reliability of Fisher's testimony under Rule 702 and excludes his expert opinion. Westberry, 178 F.3d at 260.

### IV. CONCLUSION

For the reasons discussed, the Court finds that Fisher's testimony is not reliable and **GRANTS** Antero's motion to exclude it (Dkt. No. 31).

**It is so ORDERED.**

**WELLS v. ANTERO RESOURCES CORPORATION** 1:20CV9

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANTS' MOTION TO EXCLUDE EXPERT WITNESS
TESTIMONY OF DANIEL FISHER [DKT. NO. 31]**

The Court directs the Clerk to transmit copies of this Memorandum Opinion and Order to counsel of record.

DATED: October 29, 2020

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE
